# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES LIABILITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>A&B MARKET PLUS, INC. dba CAMPUS LIQUOR AND DELI; LS & SLGM INC. dba ADAMS AVENUE LIQUOR; WALL FIRST VENTURE, INC. dba RJ LIQUOR; O.B. STAR, INC., dba LITICKERS LIQUOR; SAEED SOMO dba MESA FOOD AND LIQUOR; LATIF MAROGY dba SPOTTS LIQUOR and dba SUNRISE MARKET AND GAS; HANI SHAMOUN dba MIKE'S MARKET; NEIGHBORHOOD MARKET ASSOCIATION, INC.,<br><br>Defendants. | CASE NO. 3:19-CV-0172-GPC-AGS<br><br>**ORDER**<br><br>**(1) DENYING USLIC'S MOTION FOR SUMMARY JUDGMENT [ECF No. 14];**<br><br>**(2) GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF No. 23.]**<br><br>**(3) DENYING AS MOOT JOINT MOTION TO CONTINUE SUMMARY JUDGMENT HEARING [ECF No. 35].** |
| A&B MARKET PLUS, INC. dba CAMPUS LIQUOR AND DELI; LS & SLGM INC. dba ADAMS AVENUE LIQUOR; WALL FIRST VENTURE, INC. dba RJ LIQUOR; O.B. STAR, INC., dba LITICKERS LIQUOR; SAEED SOMO dba MESA FOOD AND LIQUOR; LATIF MAROGY dba SPOTTS LIQUOR and dba SUNRISE MARKET AND GAS; HANI SHAMOUN dba MIKE'S MARKET; | |

NEIGHBORHOOD MARKET ASSOCIATION, INC.,

    Counterclaimants,

vs.

UNITED STATES LIABILITY INSURANCE COMPANY, a Pennsylvania corporation; and DOES 1 through 10, Inclusive,

    Counterdefendants.

This case arises from an insurance coverage dispute between Plaintiff United States Liability Insurance Company ("USLIC") and Defendants Neighborhood Market Association ("NMA"), and various members of the NMA. Members of NMA successfully initiated a derivative action on NMA's behalf against its president, Mark Arabo, and another board member ("the underlying derivative action"). NMA was awarded attorney's fees as part of that action.

USLIC has moved for summary judgment on its request for declaratory relief, asking the Court to determine that attorney's fees are not covered under a Directors and Officers Liability policy ("Policy") issued to NMA by USLIC. (ECF No. 14.) That motion has been opposed (ECF No. 22), and replied to (ECF No. 29). In response, four members of the NMA—i.e., A&B Market Plus, Inc., LS & SLGM Inc., O.B. Star, Inc. and Wall First Venture, Inc. ("Defendants")—have filed for partial summary judgment on their counterclaims for a contrary declaration and for breach of contract. (ECF No. 23.) Defendants' summary judgment motion has been opposed (ECF No. 29), and replied to (ECF No. 33).

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument. For the reasons set forth below, the Court **GRANTS** Defendant's partial motion for summary judgment and **DENIES** USLIC's dueling motion.

2

# I. BACKGROUND

On September 24, 2015, Defendants and Counterclaimants A&B, LS&SLG, Wall First, and OB Star, all members of NMA ("the Members"), sued NMA, Mark Arabo, and Amir Oram for breach of fiduciary duty, illegal compensation, violation of Cal. Corp. Code §§ 8330, 8333 (right to inspect corporate books and financial records), and violation of Cal. Corp. Code § 7341 (prescribing rules for the expulsion and suspension of corporate members).[1] (ECF No. 14-2, at 5.) The Members sought injunctive relief, the removal or sanction of NMA officers, general, specific, and compensatory damages and attorney's fees. (ECF 22-1, at 3–4.) Pursuant to the Policy, USLIC agreed to defend both NMA and Mr. Arabo, through separate attorneys, subject to a full reservation of rights. (ECF 22-1, at 4.)

On January 18, 2018, the San Diego Superior Court entered a judgement ordering (1) the reinstatement of A&B Market Plus, Inc. as an NMA member, (2) unfettered access by NMA members to NMA's financial records and members lists, (3) rescission of a contract between NMA and another entity, (4) a new Board election, (5) appointment of a receiver until such election takes place, and (6) for Mr. Arabo to "pay back $248,000" to NMA. The judgment also ordered the Members to be awarded their costs and attorney's fees against Mr. Arabo and NMA in an amount to be determined. (ECF 14-2 at 18.) In October 2018, the court awarded attorney's fees of $1,150,866.50 against NMA only. (ECF 14-2, at 25.) On November 16, 2018, NMA assigned to the Members its contractual right to recover from USLIC the funds needed to satisfy the judgment entered in the underlying derivative action.

On January 25, 2019, USLIC initiated the present action for declaratory relief, (ECF No. 1); thereafter, on February 15, 2019, Defendants submitted an answer and lodged counterclaims for declaratory relief, breach of contract, and breach of the

---

[1] *A&B Market Plus, Inc., et al., v. Neighborhood Market Association, Inc., et. al.*, San Diego Superior Court Case No. 37-2015-00032389-CU-OE-CTL

3

covenant of good faith and fair dealing. (ECF No. 11.) On February 25, 2019, USLIC filed its motion for summary judgment, contending that it is under no obligation to indemnify NMA the attorney's fees because the same was not covered under the Policy's definition of "damages." (ECF No. 14.) A month later, on March 15, 2019, Defendants filed a dueling motion for partial summary judgment on their counterclaims, arguing the fees are covered under the Policy, and that USLIC has breached the Policy by refusing to pay.[2] The Policy in question states:

> "The **Company** will pay on behalf of the **Insured Loss** in excess of the RETENTION, not exceeding the Limit of Liability for which this Coverage Part applies, that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during the Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**."

(ECF No. 14-3, at 9.)[3] The Policy defines Loss as

> "damages, settlements, pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law, but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award, and other monetary sanctions that are uninsurable by operation of law.

(*Id.* at 10–11.) It also defines "Claim" as:

> "Any proceeding initiated against the **Insured**, including any appeal there from, before any governmental body legally authorized to render an enforceable judgment or order for money damages or other relief against the **Insured** alleging that the **Insured** has committed, or is responsible for, a **Wrongful Act**."

(*Id.* at 10.) Wrongful Act is further defined as

---

[2] Defendants expressly reserved the right to bring a future motion for summary judgment on their breach of the implied covenant of good faith and fair dealing counterclaim.

[3] USLIC admits the authenticity of the Policy filed by Defendants in their answer and counterclaim. (ECF No. 20, ¶ 10.)

4

> "any actual or alleged act or error, omission, misstatement, misleading statement, neglect or breach of duties, . . . Committed or allegedly committed; (1) by the **Organization**; or (2) by the **Individual Insureds** arising solely from duties conducted on behalf of the **Organization** or asserted against an **Individual Insured** because of (1) above."

(*Id.* at 12.) Finally, the Policy excludes indemnification for any Claim "on behalf of" NMA, but provides an exception to the exclusion for independent "derivative actions." (*Id.* at 13.)

USLIC argues that as a matter of law, attorney's fees are not "damages" and they are therefore not a "Loss" under the Policy. Both sides agree that sole issue before the Court is whether the Policy covers an award of attorney's fees.

## II. DISCUSSION

### A. Legal Standard

On a motion for summary judgment, the Court must determine whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact. *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609–10 (9th Cir. 2003); FED. R. CIV. P. 56. An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In their motions for summary judgment, both parties interpret the Policy under California law. (ECF No. 14, 23.) "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (quoting *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980)).

### B. Dueling Claims for Declaratory Judgment

As both parties recognize, the sole legal question before the Court with respect to their claims for declaratory judgment is whether NMA's liability to the NMA Members—for attorney's fees incurred in a derivative action for equitable and

5

declaratory relief—is subject to coverage under NMA's Policy with USLIC as "damages."

USLIC argues that California law unequivocally treats attorney's fees as "costs," rather than damages, and that NMA's attorney's fees award cannot therefore issue as a result of a Policy which restricts coverage to "damages." USLIC supports its argument by reference to California Code of Civil Procedure § 1033.5, which defines attorney's fees as costs, and decisions like *Cutler-Orosi Unified Sch. Dist. v. Tulare Cty. Sch. etc. Auth.*, 31 Cal. App. 4th 617, 632 (1994) (concluding that attorney's fees are "inconsistent with the concept of 'damages' as the term is used in its ordinary and popular sense, that is, compensation paid to a party for the loss or detriment suffered because of the wrongful act of another").

Defendants counter that disputed insurance provisions must be read through the lens of the reasonable expectations of the insured, and that the average layperson would understand the term "damages" as including attorney's fees. According to Defendants, lay understanding would encompass the dictionary definition of "damages," which includes, in part, "costs, and fees," an interpretation fortified by some California court decisions which have held that damages should be construed to include the same. Defendants further argue in the alternative that coverage necessarily extends to any attorney's fees awarded in connection with covered events, like a defense against a derivative claim. *See Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 257 (2012) ("[I]f a complaint alleges some covered wrongful acts and some acts which are not covered, the claim for attorney fees is covered only to the extent it arises out of the covered wrongful acts.").

**1. Principles of California Insurance Policy Interpretation**

Under California law, "[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003). "The burden is on the insured to establish that the claim is within the basic scope of coverage." *Id.* at 648. After the basic scope of coverage is

6

established, "the burden of proving exclusions to coverage" falls on the insurer. *Reg'l Steel Corp. v. Liberty Surplus Ins. Corp.*, 226 Cal. App. 4th 1377, 1394 (2014) (internal quotation marks and citations omitted). California law mandates that exclusions be interpreted narrowly and against the insurer. *MacKinnon*, 31 Cal. 4th at 648.

"Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract. The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage', controls judicial interpretation." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995) (some citations omitted); *Maryland Cas. Co. v. Nat'l Ins. Co.*, 65 Cal. App. 4th 21, 28 (1998) ("Words in an insurance policy must be understood in their ordinary sense unless given special meanings by the policy.").

However, not all insurance policies are crystal clear, and ambiguity might arise in any number of ways. For example, a term in an insurance policy may be "ambiguous [where] it is not defined in the policy and [where] a layperson's understanding would differ from the legal definition of the term." *Lunsford v. Am. Guarantee & Liab. Ins. Co.*, 18 F.3d 653, 654 (9th Cir.1994) (citing *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 911 (1986)). In addition, "[a] policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Waller*, 11 Cal. 4th at 18 (citations omitted).

"If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e. the insurer)." *Spangle v. Farmers Ins. Exch.*, 166 Cal. App. 4th 560, 567 (2008). This rule "protects not the subjective beliefs of the insurer but, rather, the objectively reasonable expectations of the insured." *Bank of*

*the West v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992) (quotation omitted). Where possible, "insurance coverage [must be] interpreted broadly so as to afford the greatest possible protection to the insured." *MacKinnon*, 31 Cal. 4th at 648 (quotation omitted).

### 2. The "Damages" Term

Both parties agree that coverage under the Policy exists, if at all, through the promise that USLIC will pay for "Losses," defined as "damages," arising from Claims made against NMA's wrongful acts during the Policy period. *See* Policy § I.A ("[USLIC] will pay on behalf of [the NMA] Loss. . . that [the NMA] shall become legally obligated to pay because of Claims first made against [the NMA] during the Policy Period . . . for Wrongful Acts. . . .").

The parties share no common ground, however, as to whether the term "damages" should be read to encompass attorney's fees arising in connection with a successful derivative action against NMA. USLIC insists that the California courts have unwaveringly construed attorney's fees as costs, and not "damages," and that therefore it does not owe a duty to pay Defendants for NMA's attorney's fees. (ECF No. 14, at 11–15.) Defendants counter that the caselaw compels the opposite conclusion, and that a layperson would understand the plain and ordinary meaning of "damages" to encompass attorney's fees, and that at the very least, there is an ambiguity about the term that triggers the obligation of the Court to construe the ambiguity against USLIC.

For the reasons articulated more fully below, the Court agrees with Defendants that an objectively reasonable insured would expect the term "damages," as used in the subject Policy, to include attorney's fees issued in connection with a derivative action involving injunctive relief.

### a. "Damages" Is Undefined, and Must Therefore be Ascertained According to the Reasonable Expectations of the Lay Insured

The Court begins its analysis by noting that the term "damages" is nowhere defined in the Policy. When disputed terms are undefined, governing law provides that they should be interpreted as laymen would read them, not as they might be analyzed by

8

an attorney or insurance expert. *Lebas Fashion Imports of USA Inc. v. ITT Hartford Ins. Group*, 50 Cal. App. 4th 548, 559 (1996) (noting that while "the absence from the policy of a definition of particular terms does not necessarily establish that such terms are ambiguous," such a gap might in fact be indicative of an ambiguity). Without a Policy definition of "damages" to refer to, the Court's task is to "put itself in the position of a layperson and understand how he or she might reasonably interpret the [contract] language." *MacKinnon*, 31 Cal. 4th at 659.

### b. The Dictionary Definitions Proffered by Defendants are Indicative, but Not Dispositive, of Lay Understanding

Defendants suggest that the Court use the dictionary definition of "damages" to fill the contractual gap, because dictionary definitions would approximate common usage. According to Defendants' dictionaries of choice, "damage" may mean, *inter alia*, "expense, cost," "cost; expense; charge"—the exact kind of sum which would encompass attorney's fees. (ECF No. 23-1, at 22–23.) Differently put, Defendants would define "damages" expansively, to include any sort of remunerative sum.

USLIC counters that reliance on dictionaries is near verboten under *MacKinnon*, which warned courts to regard with extreme caution those who would pluck selectively from self-serving sources without regard to the context of the policy at issue. *MacKinnon*, 31 Cal. 4th at 649 (observing on the one hand that "dictionary definitions of a word will no doubt be useful," but advising, on the other, that a court should decline to make "a fortress of the dictionary" (quoting *Russian Hill Improvement Assn. v. Bd. of Permit Appeals*, 66 Cal. 2d 34, 42 (1976)).

Mindful of the admonition in *MacKinnon*, the Court is unwilling to accord outsize weight to the dictionary definitions proffered by Defendants. However, even if not dispositive, they are, at minimum, persuasive evidence of what a layperson might understand or reasonably interpret the disputed language. *See e.g.*, *AIU Ins. Co.*, 51 Cal. 3d at 806 (enumerating and discussing cases where courts have applied dictionary definitions, rather than narrower technical meanings, of the term "damages"); *Nat'l Cas.*

*Co. v. Coastal Dev. Servs. Found.*, 171 F. App'x 680, 684 & n.3 (9th Cir. 2006) (*MacKinnon* "does not [entirely] *preclude* resort to dictionaries in the course of contract interpretation"). In any event, upon a review of the Policy, its context, and in an attempt to put itself in the shoes of a reasonable insured, the Court concludes that there is good reason to believe that the dictionary entries approximate how a layperson would regard the term damages as it is used in the Policy.

### c. Courts have found Damages to Cover Attorney's Fees in Similar Circumstances

As an initial matter, California courts have tended to read insurance contract language that is not "clear and explicit" against the drafter (usually the insurer). *AIU Ins.*, 51 Cal. 3d at 822. In doing so, courts have viewed similar provisions for "damages" through the lens of the reasonable insured and construed it broadly. For example, in *AIU Insurance*, the court held that an insurance policy covered "as damages" the costs associated with complying with an injunction and a reimbursement order for environmental clean-up expenses. In reaching this conclusion, the court held that the term damages "encompass[es] any remunerative payment made to an aggrieved party," 51 Cal. 3d at 825. Attorney's fees would appear to fall under this definition.

In fact, courts have extended the base principle found in *AIU Insurance* and held that "damages" include awards of attorney's fees where the underlying action falls within the scope of coverage. For example, in *Health Net*, the court indicated that an undefined "damages" term would encompass payment of attorney's fees to the extent that the attorney's fees are traceable to a covered wrongful act, but that an otherwise uncovered event could not invoke coverage on the basis of a claim for attorney's fees alone. *Health Net*, 206 Cal. App. 4th at 257. *Health Net* supports Defendants' interpretation of the damages term because the attorney's fees in this case issued in connection with a claim for a covered wrongful act. To wit, the Policy contemplates coverage for Loss incurred

as a result of an action, like the underlying litigation, pressing a derivative claim and seeking "other relief" like injunctive and declaratory judgment.[4]

For another example, the court in *Valley Forge Insurance Company* concluded that "the attorneys' fees awarded in the underlying litigation falls plainly within the coverage of the policy," since "[t]he fees award in the underlying litigation is 'a remunerative payment made to an aggrieved party.'" *APL Co. Pte. v. Valley Forge Ins. Co.*, 754 F. Supp. 2d 1084, 1094 (N.D. Cal. 2010), *rev'd on other grounds*, 541 F. App'x 770 (9th Cir. 2013). Similarly, the Ninth Circuit in *Insurance Company of Pennsylvania* found that "because the word 'damages' is not defined in these policies . . . we interpret the policies in favor of coverage for the attorney's fees as damages." *Ins. Co. of Penn. v. City of Long Beach*, 342 F. App'x 274, 277 (9th Cir. Jul. 17, 2009). These decisions suggest that the Policy's undefined damages term should be read broadly in favor of coverage.

---

[4] USLIC denies that it conceded that the underlying derivative action was covered by the Policy. (ECF No. 29, at 8–9.) USLIC argues that it only ever agreed that there was *potential* for coverage and defended NMA on that basis, subject to a full reservation of rights and in recognition that its duty to defend is broader than its duty to indemnify. (*Id.* (citing *Buss v. Superior Ct.*, 16 Cal. 4th 39, 46 (1997).) Just because there was a duty to defend, however, does not mean that there is coverage with respect to liability.

To that end, USLIC gestures briefly towards an argument that the underlying derivative action falls within an exclusionary clause. (*Id.* at 9.) Specifically, USLIC points to Policy § IV(B), which provides that USLIC is not liable to make payment for Loss "in connection with any Claim made against the Insured" involving "[a]ny dishonest, fraudulent or criminal **Wrongful Act** by the **Insured**." (ECF No. 14-3, at 12.) USLIC notes cryptically and without further explanation that the exclusion is "particularly important" in this case because of the "dishonest and fraudulent acts by the insureds" giving rise to the underlying derivative action. (ECF No. 29, at 8.) USLIC's half-hearted contention has no traction before the Court.

As Defendants point out, USLIC bears the burden of establishing that the exclusion applies. *Reg'l Steel*, 226 Cal. App. 4th at 1394. Based on the curt and unexplained nature of USLIC's argument, USLIC has failed to meet that burden. In any event, the Court agrees with Defendants that the exclusion has little relevance to the instant dispute: the judicially noticeable state-court judgment in the underlying case suggests that any potentially "dishonest, fraudulent or criminal" misconduct was perpetuated by Mr. Arabo, not NMA; Mr. Arabo is not implicated in the instant litigation. (*See* ECF No. 14-2, at 16 (Superior Court Judgment, dated Jan. 18, 2018).)

### d. The Context of the Policy Indicates the Inclusion of Attorney's Fees

In addition, the particularities of the Policy, construed as a whole, commands the conclusion that attorney's fees would be covered in the instant case. Recall that USLIC undertook to "pay on behalf of the Insured Loss . . . that the Insured shall become legally obligated to pay because of Claims . . . for Wrongful Acts arising solely out of an Insured's duties on behalf of the Organization." Section III(B) defines Claims as "[a]ny proceeding . . . before any governmental body legally authorized to render an enforceable judgment or order for money damages or *other relief* against such Insured alleging that the Insured has committed, or is responsible for, a Wrongful Act." (ECF No. 14-3, at 10 (emphasis added).)

In order for the "other relief" language to be afforded any meaning, the Policy must contemplate that USLIC would have to "pay on behalf of the Insured Loss" arising in connection with proceedings for "other relief," like the equitable and derivative claims pressed in the underlying case. As a matter of logic, the only way USLIC could "pay" for a proceeding not involving money damages—i.e., a proceeding for other relief—is if it is responsible for costs and expenses, like attorney's fees or, for example, costs of complying with injunctive relief, associated therewith. To construe the Policy otherwise would be to effectively strike out or render meaningless the inclusion of the "other relief" term. This the Court will not do. *See Oceanside Pier View, L.P. v. Travelers Prop. Cas. Co. of Am.*, No. 07CV1174WQHPOR, 2008 WL 7822214, at *6 (S.D. Cal. May 6, 2008) ("Like all contracts, the whole of an insurance policy 'is to be taken together, so as to give effect to every part.'" (citing CAL. CIV. CODE. § 1641)); *see also Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 818 (1994) ("[O]ne cannot read a term of an insurance policy in such a way that would render some of its words meaningless."). Thus, it would appear that "damages," as used in the Policy, would require USLIC to

indemnify Defendants for an award of attorney's fees granted pursuant to a claim of a proceeding for other relief, like declaratory and injunctive relief.[5]

### e. USLIC's Counter-arguments are Unavailing

USLIC makes two primary arguments against this conclusion.

First, it relies on California Code of Civil Procedure section 1033.5 as definitive proof that attorney's fees are costs rather than damages. Section 1033.5 treats "attorney's fees" as an element of "costs." Cal. Code Civ. Pro. § 1033.5(a)(10). The Court is not convinced that a statutory categorization of attorney's fees as "costs" is dispositive of the issue before the Court, namely, how a reasonable lay person would read the term "damages" in the context of the Policy. Disputed terms "should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." *Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 271 (1984). Indeed, California courts have expressly recognized that "a statutory characterization of attorney fees as costs is not necessarily dispositive of the proper construction, under state law, of an insurance policy." *Culter-Orosi Unified School District v. Tulare Cty. School etc. Auth.*, 31 Cal. App. 4th 617, 631–32 (1994). Thus, any specialized meaning derived from the California Code of Civil Procedure can hardly be regarded as dispositive.

---

[5] The Court pauses here to address an additional argument raised by Defendants, namely that a Policy indemnifying derivative suits would be expected to extend to attorney's fees. (ECF No. 23-1, at 26–27.) According to Defendants, it is known that under the "common fund doctrine," and the "substantial benefit principle" that attorney's fees could issue from derivative actions. (*Id.* at 27.) The Court declines to rest on this alternative assertion.
    The crux of Defendants' arguments for coverage rests on an exploration of the reasonable, objective expectation of the lay insured. In making the derivative action-based arguments, however, Defendants seem to assume that the average layman would have legal knowledge of common law principles applicable to derivative actions. This is a strange supposition to make, especially since Defendants vociferously argue against USLIC's attempt to construe the term "damages" in light of Cal. Civ. Code § 1033.5, discussed *infra* at Part II(B)(2)(e), on the grounds that the "[i]t is highly unlikely that a layman would be familiar with California procedural law generally, or § 1033.5 specifically." (ECF No. 23-1, at 30–31.) Defendants cannot have it both ways. Accordingly, their argument based on the availability of coverage for derivative actions is deemed unavailing.

Second, USLIC relies on *Cutler-Orosi* (and related cases)[6] for the proposition that attorney's fees are "inconsistent with the concept of 'damages' as the term is used in its ordinary and popular sense." 31 Cal. App. 4th at 632. *Cutler-Orosi* does not incline the Court to find in favor for USLIC.

Although the damages provision in *Cutler-Orosi* is facially similar to the one at issue here, *see id.* at 621 (describing a policy promising to indemnify "all sums which the Insured shall become obligated to pay as *as damages*. . . by reason of the liability of law"), the contexts of the policies are distinguishable. The *Cutler-Orosi* court's refusal to incorporate attorney's fees into "damages" turned on the existence of a "supplementary payment provision obligating the insurer to pay all costs taxed against the insured in a suit seeking damages . . . ." *Id.* at 631. To read attorney's fees into the damages provision in light of the explicit distinction drawn between damages on the one hand and "costs taxed against the insured," the court concluded, would be to render the latter term entirely superfluous, and "totally unnecessary." *Id.* (quoting *Sullivan Cty., Tenn. v. Home Indem. Co.*, 925 F.2d 152, 153 (6th Cir. 1991)). In contrast, there is no supplementary provision in the instant matter which juxtaposes "damages" against "all costs taxed," and in fact, as discussed *supra*, the structure of the Policy indicates that it contemplated "damages" to follow from claims for other-than monetary relief. Therefore, unlike in *Cutler-Orosi*, this Court's interpretation does not "render [any] supplemental payment provisions superfluous," but rather gives effect to "the objectively reasonable expectations of the insured," *id.* at 626, that attorney's fees would be treated as damages.

Furthermore, to the extent that *Cutler-Orosi* espoused an independent, alternative ground for holding that "damages" does not extend to an award of attorney's fees, that proposition is also easily dealt with. The fact that there has been no consensus on the

---

[6] Many of USLIC's other cited authorities, like *Travelers Prop. Cas. Co. of Am. v. FKx Med. Corp.*, 637 F. Appx 989, 991 (9th Cir. 2016) and *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 257, *as modified on denial of reh'g* (June 12, 2012) are premised on the holding in *Cutler-Orosi* and will be addressed in the same breath.

question leads to the conclusion that "the term in context is not clear and explicit." *Ins. Co. of Penn.*, 342 F. App'x at 278 (*comparing Cutler-Orosi,* 31 Cal. App. 4th at 631 (damages do not include attorney's fees), *with Golden Eagle Ins. Co.*, 99 Cal. App. 4th at 842 (damages include attorney's fees), and ultimately finding ambiguity in favor of coverage); *see also Nat'l Cas. Co.*, 171 F. App'x at 684 ("Because the definition of 'DAMAGES' in the National Policy 'is capable of two or more constructions, both of which are reasonable,' we conclude that the policy is ambiguous with respect to that term."). Differently stated, the fact that courts have arrived at different results with respect to similar "damages" provisions indicates that the term can sustain either a capacious definition or a narrower construction. Where that is the case, there is ambiguity, and the Court must resolve the ambiguity in favor of the insured. *AIU Ins. Co.*, 51 Cal. 3d at 822.

### f. Conclusion

Given the dictionary definition of the term "damages," the context and structure of the Policy, and the fact that other Courts have found "damages" in similar contexts to espouse attorney's fees, and construing the term according to the reasonable expectation of the insured, the Court will **GRANT** summary judgment to Defendants on their claim for declaratory judgment. Summary judgment on USLIC's dueling claim for declaratory judgment is **DENIED.**

### C. Claim for Breach of Contract

Defendants have also moved for summary judgment on their counterclaim for breach of contract. They assert that the terms of the Policy required USLIC to indemnify them for attorney's fees, and that USLIC's refusal to indemnify amounts to breach. Because the Court has previously found that the Policy extends coverage to attorney's fees in this case, and because the only disputed issue was whether USLIC breached a duty to indemnify, summary judgment is **GRANTED** to Defendants.

## V. Conclusion

In light of the above, the Court **GRANTS** Defendants' motion for partial summary judgment and **DENIES** USLIC's contrary motion. (ECF Nos. 14, 23.) The motion hearing set for May 17, 2019 is **VACATED**. The parties' joint motion for a continuance on the hearing date is accordingly **DENIED** as moot. (ECF No. 35.)

**IT IS SO ORDERED.**

Dated: May 13, 2019

Hon. Gonzalo P. Curiel
United States District Judge

16

3:19-CV-172-GPC-AGS